UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TAMMY K. ELLER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Case No. 1:20-CV-086-JD |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security | ) ) | |
| | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

Tammy K. Eller applied for disability insurance benefits, alleging that she is unable to work primarily due to thoracic and lumbar spine degenerative disc disease; a history of left shoulder tendinitis; chronic obstructive pulmonary disease; asthma; obesity; major depressive disorder; PTSD; and bipolar disorder. Ms. Eller was found to be not disabled in a December 2015 decision. Ms. Eller filed an appeal, and her case was remanded by the District Court in 2018. Ms. Eller was found to be not disabled again in a written decision in 2019. Ms. Eller then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition, and Ms. Eller filed a reply. As explained below, the Court remands the Commissioner's decision.

**I.     Factual Background**

Until she stopped working, Ms. Eller worked as a cashier. Ms. Eller suffers from degenerative changes in the thoracic and lumbar spine and wedging in the thoracic spine, left shoulder tendinitis, COPD, asthma, obesity, major depressive disorder, PTSD, and bipolar disorder. (R. 729).

Ms. Eller applied for benefits in 2013. She alleges disability starting August 1, 2010, and she last met the insured status requirements of the Social Security Act on December 31, 2013. (R. 729). The ALJ issued an unfavorable decision on November 18, 2019. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant was not able to climb ladders, ropes, scaffolds and she was only occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She was also not able to reach overhead with the left upper extremity. She needed a sit/stand option but she was able to remain at the workstation and on task despite positional changes. She also needed to avoid all exposure to temperature extremes and pulmonary irritants, such as fumes, odors, dusts, and gases and she needed to avoid concentrated exposure to unprotected heights, slippery or uneven surfaces, and dangerous moving machinery. She further needed to work in an environment with air conditioning. In addition, the claimant was able to understand, remember[,] and carry out simple instructions and tasks, make judgments on simple work-related decisions, respond appropriately to usual work situations, deal with routine changes in a routine work setting, and respond appropriately to occasional interactions with co-workers, supervisors, and the general public.

(R. 731-32). Finding that Ms. Eller can perform other work in the economy, the ALJ found that she is not disabled. The Appeals Council declined review, and Ms. Eller filed this action seeking judicial review of the Commissioner's decision.

## II.    Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a

preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v);

416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.**     **Discussion**

Ms. Eller offers four arguments in support of reversal. She argues that the ALJ erred in

evaluating medical opinion evidence; that the ALJ erred in evaluating her subjective symptoms; the ALJ erred by failing to consult a medical expert; and the ALJ erred in evaluating her mental impairments and in formulating the RFC. The Court finds that the ALJ erred in the analysis of Ms. Eller's mental impairments both at step two and in the RFC analysis.

Ms. Eller asserts that the ALJ erred in assessing her mental RFC. Her first argument is that the ALJ concluded that her mental examinations were "largely within normal limits, except for tearfulness, psychomotor retardation, depressed mood, up to 'moderate' distress, and flat, sad, or anxious affect." (R. 730). That sentence by itself is not logical. The examinations cannot be within normal limits and still reflect tearfulness, psychomotor retardation, depressed mood, moderate distress, and flat, sad or anxious affect. Furthermore, as the ALJ recognizes later in the decision, Ms. Eller had passive suicidal ideations, which are not consistent with mental health examinations "largely within normal limits." (R. 734).

A psychiatric evaluation from 2011 states that Ms. Eller was struggling with "a lot of depression" and passive suicidal ideation, and she was diagnosed with post-traumatic stress disorder and major depressive disorder, recurrent, moderate. (R. 348-50). Further notes from 2011 note increased psychomotor retardation, depressed mood, and flat affect, (R. 354). Her medication was adjusted. Her doctors discontinued Lexapro and Amitriptyline, but she was started on Prozac and Trazodone. (R. 356). Her Prozac was later increased. (R. 392). Clinicians noted disordered thinking, and tearfulness. (R. 365, 387, 389). In March 2013, her medications had increased, but her PTSD and major depression were listed as stable. (R. 378-80). By early December 2013, her PTSD was noted to be worsening, and her medication was adjusted. (R. 538-40).

The record indicates that although Ms. Eller stated she did not intend to act on her

suicidal ideations, she wished she were dead. (R. 348). The record supports significant mental impairments. Yet the ALJ does not address them thoroughly in the decision. In the RFC analysis, the ALJ once again noted that Ms. Eller's mental status examination findings 'were largely within normal limits, except for passive suicidal ideation, tearfulness, psychomotor retardation, depressed mood, up to 'moderate' distress, and flat, sad, or anxious affect.". (R. 734). Suicidal ideation, even passive suicidal ideation[1], is not consistent with "normal" examinations. The ALJ has failed to build a logical bridge from Ms. Eller's medically documented symptoms and limitations with the conclusion that her mental health examinations were "largely within normal limits." Passive suicidal ideation, tearfulness, psychomotor retardation, moderate destress, depressed mood, and flat affect are not symptoms that can logically be classified as "normal" in a mental health examination.

The ALJ also relied on Plaintiff's lack of hospital visits for her mental health impairments. Specifically, the ALJ stated that there is "no evidence in the record that, during the period at issue in this decision, the claimant was hospitalized on an inpatient basis for a psychiatric reason." (R. 731). This language was repeated in the analysis of the treating psychiatrist's opinion, where the ALJ noted that the psychiatrist's opinion was inconsistent with evidence in the record, "including the claimant's lack of inpatient psychiatric hospitalizations during the period at issue in this decision." (R. 736). However, a lack of hospitalization is not evidence that a claimant is capable of fulltime employment. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) ("The institutionalization of the mentally ill is generally reserved for persons who

---

[1] Passive suicidal ideation is a desire to die, while active suicidal ideation is an intent to die with a specific plan. May, C. N., Overholser, J. C., Ridley, J., & Raymond, D. (2015). Passive Suicidal Ideation: A Clinically Relevant Risk Factor for Suicide in Treatment-Seeking Veterans. Illness, Crisis & Loss, 23(3), 261–277. https://doi.org/10.1177/1054137315585422 (last accessed April 14, 2021).

are suicidal, otherwise violent, demented, or (for whatever reasons) incapable of taking even elementary care of themselves."). The ALJ has erred in the analysis of Ms. Eller's mental impairments.

Similarly, the ALJ erred in assessing Ms. Eller's Paragraph B criteria at step three. The ALJ found that Ms. Eller has moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 730). The ALJ discussed all of the Paragraph B criteria for Ms. Eller's mental health impairments in one paragraph, with no distinction as to which portions of evidence applied directly to any specific limitation. In analyzing all of the paragraph B criteria, the ALJ relied on mental examinations that were "largely within normal limits, except for tearfulness, psychomotor retardation, depressed mood, up to 'moderate' distress, and flat, sad, or anxious affect." (*Id.*). The ALJ also noted that "she had only passive suicidal ideation." (R. 731). As discussed previously, the ALJ erred in characterizing Ms. Eller's mental health examinations as normal yet describing mental health examinations that were anything but normal. The ALJ has failed to build a logical bridge from the evidence of Ms. Eller's mental health examinations to the conclusion that those examinations were normal. This error is present not only in the RFC decision, but also in the Paragraph B discussion at Step Three.

This same error is repeated in the ALJ's analysis of the opinion from Dr. Ahmad, Ms. Eller's treating psychiatrist. (R. 736). Dr. Ahmad opined that Ms. Eller's severe anxiety and depression would limit her ability to hold and keep a job. (R. 1564). Dr. Ahmad also opined Ms. Eller would only be able to complete a normal workday and workweek without interruptions from psychologically based symptoms less than 70% of the time, and that she would likely be absent more than four days per month due to her mental health impairments or treatment. (R.

1566, 1568). In discussing Dr. Ahmad's opinion, the ALJ found that the "rather extreme limitations" in the opinion "are not supported by the progress notes … which included no documentation that the claimant had any homicidal ideation, more than passive suicidal ideation, or markedly or extremely abnormal mental status examination findings." (R. 736). The ALJ did not explain what constitutes "markedly or extremely abnormal mental status examination findings." The ALJ acknowledges that Ms. Eller had passive suicidal ideation yet finds that passive suicidal ideation is not markedly or extremely abnormal in a mental health examination. The ALJ's failure to explain what constitutes "markedly or extremely abnormal mental status examination findings" after finding that passive suicidal ideation is not markedly or extremely abnormal "borders on the ALJ's own opinion as to what constitutes a [markedly or extremely abnormal mental status examination finding], leading to the suspicion that she substituted the opinions of medical professionals for her own, which is not permitted." *Huges v. Colvin*, No. 14 C 1883, 2015 U.S. Dist. LEXIS 61776, at *44 (N.D. Ill May 12, 2015); *citing Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), *Herron v. Saul*, 19 F.3d 329, 334 n.10 (7th Cir. 1994), *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The ALJ has failed to build a logical bridge from Ms. Eller's mental health examination findings to her conclusion that these findings were normal. The ALJ also again relied on Ms. Eller's lack of inpatient psychiatric hospitalizations, which is in error. The Court cannot be sure that the ALJ properly considered Ms. Eller's mental limitations when her severe symptoms noted in mental health treatment were so casually dismissed as "normal" examinations. This error may affect the RFC analysis, the assessment of Ms. Eller's treating psychiatrist, and the hypothetical given to the VE. This error requires remand.

      The ALJ erred in discussing Ms. Eller's mental health impairments. On remand, the ALJ

must properly weigh the evidence and make a full and proper analysis of Ms. Eller's mental health impairments. Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: April 14, 2021

                                              /s/ JON E. DEGUILIO
                                              Chief Judge
                                              United States District Court